IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAM THANH NGYUEN,

             Plaintiff,

    v.

COMMONWEALTH OF PENNSYLVANIA,
et al.,

             Defendants.

CIVIL ACTION
NO. 15-5082

## OPINION

**Slomsky, J.**                                                        **November 6, 2017**

## I.    INTRODUCTION

Plaintiff Tam Thanh Ngyuen brings this counseled civil rights action under 42 U.S.C. § 1983 against Defendant Pennsylvania State Trooper Jarret Bromberg[1] alleging that Defendant's traffic stop, search, and arrest of Plaintiff violated his constitutional rights.[2]  (Doc. No. 12.) Trooper Bromberg is the only Defendant remaining in this case, and the claims against him are set forth in Counts I and III of an Amended Complaint.  (Id.)  In Count I, Plaintiff alleges that Defendant violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights as a result of Defendant's illegal stop, search, and seizure of Plaintiff.  (Id.)  In Count III, Plaintiff alleges that

---

[1]    In the Amended Complaint, Plaintiff incorrectly refers to Defendant Jarret Bromberg as "Jared Bromberg."  (Doc. No. 12.)

[2]    Plaintiff originally instituted this action against Pennsylvania State Trooper Jarret Bromberg, former Pennsylvania State Police Commissioner Frank Pawlowski, and the Commonwealth of Pennsylvania.  (Doc. No. 1.)  On May 12, 2016, Defendants Pawlowski and the Commonwealth of Pennsylvania were terminated by Order of Judge Stewart Dalzell of this Court.  (Doc. No. 10.)  On May 31, 2016, Plaintiff filed an Amended Complaint against Trooper Bromberg and the Commonwealth of Pennsylvania.  (Doc. No. 12.)  On July 25, 2016, the Commonwealth of Pennsylvania was terminated again by Order of Judge Dalzell, leaving Trooper Bromberg as the sole remaining Defendant.  (Doc. No. 19.)

Defendant violated his Fourth, Fifth, and Fourteenth Amendment rights by arresting and detaining him without probable cause. (<u>Id.</u>)

Before the Court are the parties' cross-motions for summary judgment. Plaintiff has filed a Motion for Summary Judgment, contending that issue preclusion prevents Defendant from re-litigating the Fourth Amendment search and seizure violation alleged in Count I. (Doc. No. 30.) He asserts that this issue was previously decided by the Pennsylvania Superior Court. (<u>Id.</u>) Defendant has filed a Response in Opposition (Doc. No. 36) and has also filed a Motion for Summary Judgment. (Doc. No. 32.) In his Motion, Defendant asserts that Plaintiff's Fourth Amendment false arrest claim in Count III fails because Defendant had probable cause to arrest Plaintiff. (<u>Id.</u>) In addition, Defendant submits that he is entitled to qualified immunity on the claims alleged in both Counts and that the applicable statute of limitations bars Plaintiff's claims. (<u>Id.</u>) Plaintiff then filed a Response to Defendant's Motion for Summary Judgment. (Doc. No. 40.) On July 14, 2017, the Court held a hearing on the cross-motions for summary judgment. After the hearing, Plaintiff and Defendant filed Supplemental Briefs in regard to the Motions for Summary Judgment. (Doc. Nos. 43, 46.) The Motions are now ripe for disposition.

For reasons that follow, the Court will grant Defendant's Motion for Summary Judgment (Doc. No. 32) in its entirety and will deny Plaintiff's Motion for Summary Judgment. (Doc. No. 30.)[3]

---

[3] In deciding these Motions, the Court has considered Plaintiff's Motion for Summary Judgment (Doc. No. 30); the Appendix to Plaintiff's Motion for Summary Judgment (Doc. No. 31); Defendant Jarret Bromberg's Motion for Summary Judgment (Doc. No. 32); Defendant's Statement of Undisputed Facts in Support of a Motion for Summary Judgment (Doc. No. 33); Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment (Doc. No. 34); Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 36); Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 40); the arguments of counsel at the July 14, 2017 hearing; Supplemental Brief in Support of Plaintiff's Response to Defendant's Motion for Summary

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Defendant's Traffic Stop, Search, and Arrest of Plaintiff

On January 4, 2012 at approximately 3:15 a.m., Plaintiff was traveling southbound on Interstate 95 ("I-95") in a black Mercedes Benz. (Doc. No. 34, Ex. A at 21:11-22:13; Id., Ex. C at 8:13-9:8.) He was traveling from Chinatown in Philadelphia, Pennsylvania to his home in Newark, Delaware. (Id.) Plaintiff's friend, David Kung, was driving the vehicle, and Plaintiff was a passenger in the front seat. (Id., Ex. C at 8:3-8:12.) At the same time, Defendant, a Pennsylvania State Trooper, was patrolling on I-95 in a marked Pennsylvania State Police patrol vehicle with his partner, Trooper Thomas O'Konski. (Id., Ex. A at 21:5-23:5.) Defendant saw the black Mercedes pass his patrol vehicle at approximately 73 miles per hour and then follow closely behind another vehicle. (Doc. No. 31, Ex. B at 3.) Defendant activated the lights and the siren on his patrol vehicle to initiate a traffic stop of the Mercedes. (Id.) In response, the Mercedes pulled over to the right side of I-95, between exit 7 and exit 8. (Id.) The patrol vehicle did the same thing.

Next, Defendant and Trooper O'Konski exited the patrol vehicle and approached the Mercedes. (Doc. No. 34, Ex. A at 23:19-23:25.) Defendant asked Mr. Kung for his license, registration, and proof of insurance, which Mr. Kung provided. (Id. at 24:12-24:23.) Defendant then asked Mr. Kung to step out of the Mercedes and stand at the back of the vehicle. (Id. at 24:22-25:1.) He then asked Plaintiff for his identification, and Plaintiff provided his driver's license. (Id. at 27:2-27:5; Id., Ex. C at 10:15-10:20.) According to Defendant, when asked for his identification, Plaintiff "was very hesitant, would not make any eye contact, and just wouldn't answer questions initially." (Id., Ex. A at 27:6-27:8.) Defendant then ran both

---

Judgment (Doc. No. 43); and Supplemental Memorandum of Law in Support of Commonwealth Defendant's Motion for Summary Judgment (Doc. No. 46).

Plaintiff's and Mr. Kung's driver's licenses through CLEAN/NCIC and PennDOT.[4]  (Id. at 28:7-28:8.)  Upon running Plaintiff's driver's license through CLEAN/NCIC, Defendant discovered that Plaintiff had numerous prior drug arrests.  (Id. at 28:23-28:25.)

Defendant returned to Plaintiff and Mr. Kung the items provided and issued to Mr. Kung a warning for speeding and for following another vehicle too closely.  (Id. at 29:4-30:6; Id., Ex. C at 13:10-13:13.)  Mr. Kung thanked Defendant.  (Id., Ex. A at 29:21.)  Defendant observed, however, that Mr. Kung was "very apologetic," that he was "over-talking," and that he was nervous.  (Id. at 29:21-29:23.)  Defendant did not notice any signs of intoxication or have any other reason to arrest Mr. Kung.  (Id. at 30:19-30:23.)  Defendant then informed Mr. Kung that the traffic stop was complete and that he was free to go.  (Id. at 30:14-30:15.)  Mr. Kung began to walk back to the Mercedes, while Defendant began to walk back to the patrol vehicle.  (Id. at 30:16-30:18.)

Once Defendant had reached the patrol vehicle's door and once Mr. Kung had almost reached his vehicle's door, Defendant turned around and asked Mr. Kung if he could ask him a few more questions.  (Id. at 31:24.)  Mr. Kung said yes.  (Id. at 31:25.)  Defendant then asked Mr. Kung about his nervousness, why he was being excessively apologetic, and why he was "over talking when [Defendant] was asking him basic questions."  (Id. at 32:18-32:20.)  He asked Mr. Kung where he was going and how he knew Plaintiff.  (Id. at 32:20-21.)  Mr. Kung answered all of Defendant's questions.  (Id. at 32:23.)  Defendant then asked Mr. Kung if he could search the vehicle, and Mr. Kung consented.  (Id. at 33:4-34:3.)

---

[4]    CLEAN/NCIC provides police with a driver's criminal history, while PennDOT informs police whether a driver's license is active, inactive, or suspended.  (Doc. No. 34, Ex. A at 28:9-28:15.)

Defendant then walked to the passenger side and asked Plaintiff to step out of the vehicle. (Id. at 34:6-34:8; Id., Ex. C at 20:5-20:7.) He informed Plaintiff that Mr. Kung had granted him consent to search the vehicle. (Id., Ex. A at 34:8-34:9; Id., Ex. C at 20:10-20:11.) Plaintiff avoided eye contact with Defendant as he stepped out of the vehicle. (Id., Ex. A at 34:17.) Defendant then asked Plaintiff if he had any firearms, and Plaintiff said no. (Id. at 35:15-16.) Defendant asked Plaintiff if he could perform an exterior pat-down of Plaintiff for his safety. (Id. at 35:16-35:17.) Plaintiff consented to the pat-down. (Id. at 35:17.) During the pat-down, Defendant felt a cellular telephone in Plaintiff's pocket and cash in his right back pocket. (Id. at 39:20-39:22.) Defendant then felt a soft package in Plaintiff's right front pocket, which Defendant believed to be pills, based on his training and experience. (Id. at 39:23-39:25.) When Defendant asked what the object was, Plaintiff said it was OxyContin. (Id. at 40:1-40:2.) Defendant asked Plaintiff to take the pills out of his pocket, and Plaintiff complied. (Id. at 42:11-13.) When Plaintiff took out the pills, Defendant noticed that they were packaged in small clear Ziploc bags. (Id. at 42:14-42:19.)

Defendant then put Plaintiff in handcuffs and placed him under arrest. (Id. at 43:6-43:7.) After arresting Plaintiff, Defendant searched him. (Id. at 43:10-43:12.) During the search, Defendant found: (1) US currency totaling over $1,000 in various denominations and wrapped in three bundles; (2) a cell phone; (3) four bags of cocaine; and (4) four jars of crack cocaine. (Id. at 43:15-44:3.)

B.    **Pennsylvania State Court Proceedings**

On January 4, 2012, following his arrest, Plaintiff was charged with possession of a controlled substance, possession of drug paraphernalia, and possession with intent to deliver a controlled substance. (Id., Ex. B at 1-2.) That same day, Plaintiff was arraigned in the Court of

Common Pleas of Delaware County, Pennsylvania.  (<u>Id.</u>, Ex. D at 1.)  On January 5, 2012, Plaintiff posted bail and was released from jail.  (<u>Id.</u>, Ex. E at 5.)

On August 14, 2012, Plaintiff filed a motion to suppress the evidence seized as a result of his search.  (<u>Id.</u>, Ex. E at 6.)  On June 20, 2013, the trial court held a hearing on the motion to suppress.  (<u>Id.</u> at 8.)  On October 16, 2013, the court denied Plaintiff's motion to suppress.  (<u>Id.</u> at 10.)  After a bench trial on March 14, 2014, Plaintiff was found guilty of possession with intent to deliver a controlled substance in violation of 35 Pa. Stat. § 780-113(a)(30).  (<u>Id.</u> at 11.)  Plaintiff then filed a timely notice of appeal to the Pennsylvania Superior Court, arguing that the trial court abused its discretion in denying his motion to suppress.  (<u>Id.</u> at 12.)

On appeal, the Superior Court reversed the trial court's order denying Plaintiff's motion to suppress, vacated his sentence, and remanded the case for a new trial.  <u>Commonwealth v. Nguyen</u>, 116 A.3d 657, 669 (Pa. Super. Ct. 2016).  The court explained that although the initial traffic stop was lawful, the court was required to determine whether the second interaction with Plaintiff constituted a seizure, and whether that seizure was supported by reasonable suspicion.  <u>Id.</u> at 667.  The court concluded that Plaintiff and Mr. Kung were subject to a second seizure after Defendant had told them they were free to leave.  <u>Id.</u>  Next, the court found that Mr. Kung's behavior during the traffic stop and Plaintiff's criminal history were insufficient to establish reasonable suspicion for the second seizure.  <u>Id.</u> at 669.

Finally, with respect to Defendant's search of Plaintiff, the Superior Court held that "there was insufficient attenuation between the consent and the illegal detention to purge the taint of [Defendant's] unlawful conduct."  <u>Id.</u>  As a result, Plaintiff's consent was "ineffective to justify the search."  <u>Id.</u>  Therefore, because the second seizure was not supported by reasonable suspicion and because the consent was tainted by the unlawful seizure, "the evidence seized

during the pat-down search should have been suppressed." Id.  Following the Superior Court's decision, on October 27, 2015 the Court of Common Pleas granted the Commonwealth of Pennsylvania's Application for Nolle Prosequi, and the charges against Plaintiff were dismissed. (See Doc. No. 34, Ex. E at 13.)

### C. Plaintiff's 42 U.S.C. § 1983 Civil Rights Action

On September 11, 2015, Plaintiff filed this civil rights action against Defendants, alleging that his search, seizure, and arrest on January 4, 2012 violated his constitutional rights.  (Doc. No. 1.)  On April 12, 2016, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Doc. No. 6.)  On May 31, 2016, Plaintiff filed an Amended Complaint against Trooper Jarret Bromberg and the Commonwealth of Pennsylvania.  (Doc. No. 12.)  On July 1, 2016, the Commonwealth of Pennsylvania filed a Motion to Dismiss for Lack of Jurisdiction.  (Doc. No. 17.)  On July 25, 2016, Judge Stewart Dalzell granted the Commonwealth's Motion to Dismiss, and the Commonwealth of Pennsylvania was terminated as a Defendant.  (Doc. No. 19.)  On August 9, 2016, Defendant Bromberg, the sole remaining Defendant in this case, filed an Answer to the Amended Complaint.  (Doc. No. 20.)  On November 15, 2016, this case was reassigned from Judge Dalzell to this Court.  (Doc. No. 25.)  The parties proceeded to discovery.  After discovery concluded, both parties filed Motions for Summary Judgment.  (Doc. Nos. 30, 32.)

## III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155,

158 (3d Cir. 2013) (quoting <u>Azur v. Chase Bank, USA, Nat'l Ass'n</u>, 601 F.3d 212, 216 (3d Cir. 2010)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. <u>Kaucher v. Cty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." <u>Favata</u>, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." <u>Id.</u> (quoting <u>Azur</u>, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> (alteration in original) (quoting <u>Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.</u>, 587 F.3d 176, 181 (3d Cir. 2009)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. <u>Anderson</u>, 477 U.S. at 247-49. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the court must credit the nonmoving party's evidence over that presented by the moving party. <u>Id.</u> at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. <u>Id.</u> at 250.

Here, the parties filed cross-motions for summary judgment. "The same standards and burdens apply on cross-motions for summary judgment." <u>Allah v. Ricci</u>, 532 F. App'x 48, 50 (3d Cir. 2013). When the Court is confronted with cross-motions for summary judgment:

> [T]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance

with the summary judgment standard. If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.

Hussein v. UPMC Mercy Hosp., No. 2:09-cv-00547, 2011 WL 13751, at *2 (W.D. Pa. Jan. 4, 2011), aff'd, 446 F. App'x 108 (3d Cir. 2012) (second alteration in original) (internal quotation marks and citations omitted).

## IV. ANALYSIS

As noted, Plaintiff brings claims for unreasonable search and seizure, and false arrest in violation of the Fourth Amendment. For reasons stated below, Plaintiff's Motion for Summary Judgment will be denied because issue preclusion does not apply to Plaintiff's Fourth Amendment search and seizure claim. Defendant's Motion for Summary Judgment, however, will be granted for several reasons. First, Plaintiff's claims for unreasonable search and seizure and false arrest fail because Defendant's actions were not unconstitutional. Second, Defendant is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights and because Defendant did not violate clearly established law. Finally, Defendant is entitled to summary judgment because Plaintiff's claims are time barred, as he instituted this action after the two-year statute of limitations had lapsed. The Court will discuss each issue in turn.

### A. Plaintiff's Motion for Summary Judgment Will Be Denied Because Issue Preclusion Does Not Apply to Plaintiff's Fourth Amendment Search and Seizure Claim

Plaintiff contends that he is entitled to summary judgment on Count I of his Amended Complaint alleging an unreasonable search and seizure in violation of the Fourth Amendment. (Doc. No. 30-1 at 3.) Specifically, Plaintiff asserts that Defendant is collaterally estopped from re-litigating whether Plaintiff's Fourth Amendment rights were violated as a result of the traffic stop, search, and seizure. (Id.) He argues that the Pennsylvania Superior Court already decided

this issue when it reversed the trial court's denial of Plaintiff's motion to suppress.[5] (Id.) Thus, Plaintiff argues that under Pennsylvania law, this Court must honor the decision of the state court. (Id. at 5.) In response, Defendant submits that issue preclusion does not apply because the identity of the parties and the quality or capacity of the parties was not the same in both actions. (Doc. No. 36 at 1-2.) Defendant argues that (1) he was not in privity with the government in Plaintiff's prosecution, and (2) he did not have a full and fair opportunity to litigate this issue previously. (Id. at 3.) Because Defendant only disputes these two elements of issue preclusion, the Court will address only those elements.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, governs the preclusive effect of a state court judgment in a subsequent federal lawsuit.[6] Sec'y U.S. Dep't of Labor v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017). The Supreme Court has interpreted this statute "to require federal courts to look to state law to determine the preclusive effect of a prior state judgment." Id. (citing Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 380 (1985)). Therefore, Pennsylvania law on issue preclusion applies in this matter. Id.

Under Pennsylvania law, issue preclusion requires four conditions:

---

[5]    In Plaintiff's Motion for Summary Judgment (Doc. No. 30-1) and Defendant's Response in Opposition (Doc. No. 36), the parties use the terms collateral estoppel, issue preclusion, and res judicata interchangeably. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." M & M Stone Co. v. Pennsylvania, 388 F. App'x 156, 161 (3d Cir. 2010) (internal quotation marks omitted). Thus, for clarity, the Court will use only the term issue preclusion.

[6]    28 U.S.C. § 1738 provides, in relevant part, as follows:

    Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

(1) the issue decided in the prior adjudication was identical with the one presented in the later action;

(2) there was a final judgment on the merits;

(3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and

(4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

M & M Stone Co. v. Pennsylvania, 388 F. App'x 156, 161 (3d Cir. 2010) (quoting Shuder v. McDonald's Corp., 859 F.2d 266, 273 (3d Cir. 1988)).

Applying the elements of issue preclusion to a police officer in a § 1983 lawsuit, courts generally find that (1) the police officer was not in privity with the government in the criminal prosecution, and (2) the police officer was not afforded a full and fair opportunity to litigate the matter. Simply put, a defendant in a § 1983 action who is sued in his individual capacity is not in privity with the government in a prior criminal prosecution. Skunda v. Pa. State Police, 47 F. App'x 69, 71 (3d Cir. 2012). In Skunda, plaintiff was not permitted to assert offensive issue preclusion to prevent a state trooper from re-litigating a Fourth Amendment probable cause issue. Id. The state trooper was sued in his individual capacity and was not in privity with the government in the previous criminal proceeding. Id.; see also Zamichiele v. Andrews, No. 12-3200, 2016 WL 8732421, at *6 (E.D. Pa. Apr. 15, 2016) (holding that plaintiff was not permitted to assert issue preclusion against police officer in his § 1983 lawsuit because the police officer was not in privity with the government in his criminal prosecution).

Moreover, a defendant is denied a full and fair opportunity to litigate an issue only when state procedures fall "below the minimum requirements of due process as defined by federal law." Ochner v. Stedman, 572 F. App'x 143, 148 (3d Cir. 2014) (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1074 (3d Cir. 1990)). These minimum requirements include the

right to representation, the right to present testimony and documentary evidence, and the right to subpoena and cross-examine witnesses.  Metro. Edison Co. v. Pa. Pub. Util. Comm'n., 767 F.3d 335, 351 n.22 (3d Cir. 2014) (citing Rue v. K-Mart Corp., 713 A.2d 82, 85 (Pa. 1998)).

Police officers are not afforded a full and fair opportunity to litigate an issue of probable cause in a criminal case.  Williams v. Temple Univ., Civ. No. 04-831, 2009 WL 429992, at *3 (E.D. Pa. Feb. 19, 2009).  Officers are not represented by the prosecutor in a criminal action, they do not control the prosecutor, they do not make decisions in a criminal case, and they cannot appeal the suppression of evidence.  Id. (citing Duncan v. Clements, 744 F.2d 48, 52 (8th Cir. 1984)).

Here, because Defendant was sued in his individual capacity, he was not in privity with the government in Plaintiff's criminal prosecution.  Defendant was not afforded a full and fair opportunity to litigate the Fourth Amendment issue at Plaintiff's motion to suppress hearing.  He was not represented by counsel in that matter.  Defendant also was not given the opportunity to present testimony and evidence in his favor or to subpoena and cross-examine witnesses. Because Defendant was not in privity with the government and was not afforded a full and fair opportunity to litigate the motion to suppress, Plaintiff has failed to meet his burden of establishing all four conditions necessary for issue preclusion under Pennsylvania law. Therefore, summary judgment will be denied, and issue preclusion will not prevent Defendant from litigating an issue of probable cause in a § 1983 action.

### B.    Defendant's Motion for Summary Judgment Will Be Granted

As noted earlier, Defendant argues that his Motion for Summary Judgment should be granted for three reasons.  First, he submits that Plaintiff's Fourth Amendment search and seizure and false arrest claims fail because Defendant had probable cause to arrest Plaintiff for

possession of narcotics and therefore did not violate Plaintiff's constitutional rights.[7]  (Doc. No. 32 at 5.)  Next, Defendant submits that he is entitled to qualified immunity on both of Plaintiff's claims because the search and arrest did not violate clearly established law.  (Id. at 10.)  Finally, Defendant argues that Plaintiff's claims are time barred because he initiated this action after the applicable statute of limitations had lapsed.  (Id. at 8.)  The Court finds that Defendant did not violate Plaintiff's constitutional rights, and even if he did, Defendant would be entitled to qualified immunity.  Thus, for reasons that follow, the Court will grant summary judgment in favor of Defendant.

### 1.    Plaintiff's Fourth Amendment Search and Seizure Claim Fails Because the Traffic Stop, Search, and Seizure Were Constitutional

In Count I, Plaintiff contends that his Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated as a result of Defendant's illegal stop, search, and seizure of Plaintiff.  (Doc. No. 12.)  Plaintiff alleges that Defendant "acted under color of state law and conducted an unauthorized, warrantless illegal stop, search and seizure of Plaintiff."  (Id. ¶ 52.)  He asserts that "the illegal and warrantless stop set in motion the chain of events that led to an unauthorized and warrantless illegal search and seizure."  (Id.)

In many § 1983 cases involving Fourth Amendment search and seizure allegations, it is necessary to analyze each of the law enforcement officer's actions separately.  See Muehler v. Mena, 544 U.S. 93, 98-101 (2005) (analyzing each of the officer's actions separately during a search and seizure to determine whether plaintiff's Fourth Amendment rights had been violated); see also Keating v. Pittston City, 643 F. App'x 219, 223-27 (3d Cir. 2016) (same).  In this case, a

---

[7]    In his Motion for Summary Judgment, Defendant did not argue the issue of whether Plaintiff's constitutional rights were violated during the traffic stop, search, and seizure. However, at the hearing on the cross-motions for summary judgment, Defendant argued that the stop, search, and seizure did not violate Plaintiff's constitutional rights.  (See H'rg Tr. at 16:10-16:13.)

separate analysis of each of Defendant's actions is also required. Plaintiff's encounter with Defendant, as it relates to his search and seizure claim, can be separated into three stages: (i) the initial traffic stop; (ii) the extended detention and request for Plaintiff to exit the vehicle; and (iii) Defendant's search of Plaintiff. The Court will address each stage in turn.

### i. The Initial Traffic Stop

First, the Court must determine whether the initial traffic stop was lawful. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV; see also United States v. Brown, 765 F.3d 278, 288 (3d Cir. 2014). It is well settled that when an officer stops a vehicle, the driver and the passengers are subject to a Fourth Amendment seizure. Davenport v. Borough of Homestead, 870 F.3d 273, 279 (3d Cir. 2017) (citing Brendlin v. California, 551 U.S. 249, 254-56 (2007)).

As an initial matter, a vehicle's technical violation of the applicable traffic code legitimizes a stop, "even if the stop is merely pretext for an investigation of some other crime." United States v. Byrd, 679 F. App'x 146, 149 (3d Cir. 2017) (quoting United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006)). Once the vehicle has been stopped, the officer may ask the occupants questions, check occupants' credentials, and visually examine the interior of the vehicle. Mosley, 454 F.3d at 252. The reasonable suspicion standard announced in Terry v. Ohio, 321 U.S. 1 (1968), applies to traffic stops. United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006). Reasonableness is determined by "the totality of the circumstances," and courts consider "whether the facts and circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action." Morgan v. Borough of Fanwood, 680 F. App'x 76, 81 (3d Cir. 2017) (second quoting United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007)).

Here, Plaintiff, a passenger in the Mercedes, was seized when the vehicle was stopped. The parties agree that Defendant observed the Mercedes traveling 73 miles per hour in a 55 mile per hour zone. (Doc. No. 33 ¶ 6, Doc. No. 40-2 ¶ 2.) It is also undisputed that Defendant observed the vehicle following too closely to another car. (Doc. No. 40-2 ¶ 2.) Driving in excess of the speed limit violates 75 Pa. Cons. Stat. § 3362, and following too closely to another vehicle violates 75 Pa. Cons. Stat. § 3310. Therefore, Defendant's observation of two traffic violations justified the traffic stop. After stopping the vehicle, Defendant asked Plaintiff for his identification, which Plaintiff provided. (Doc. No. 34, Ex. A at 27:2-27:5; Id., Ex. C at 10:15-10:20.) Defendant was permitted to ask Plaintiff for this information pursuant to the lawful traffic stop. Therefore, under the totality of the circumstances, Defendant's initial traffic stop of the Mercedes was legal, even though Plaintiff was technically seized.

### ii.      The Extended Detention and Request to Exit the Vehicle

Next, the Court must determine whether Defendant's extension of the traffic stop was constitutional. The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." United States v. Frierson, 611 F. App'x 82, 85 (3d Cir. 2015) (quoting Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015)). In Rodriguez, the Supreme Court held:

> A police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified by a police-observed traffic violation, therefore "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."

Rodriguez, 135 S. Ct. at 1612 (alterations in original) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)).

There are two exceptions, however, to the general prohibition on exceeding the time needed to address the traffic violation. United States v. Narcisse, 501 F. App'x 142, 145 (3d Cir. 2012). First, an officer is permitted to "expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if he 'develops a reasonable, articulable suspicion of criminal activity.'" Frierson, 611 F. App'x at 85 (quoting United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003)). Second, a traffic stop may become consensual "if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." United States v. Hodge, No. 1:16-CR-242-2, 2017 WL 2672303, at *4 (M.D. Pa. June 21, 2017) (quoting United States v. Wilson, 413 F.3d 382, 386-87 (3d Cir. 2005)); see also United States v. Gooch, 915 F. Supp. 2d 690, 699, 710 (W.D. Pa. 2012) (holding that where officer said passenger was free to go, walked back to his patrol car, then re-initiated conversation, the conversation after the traffic stop was a consensual encounter and was not a seizure). And a police officer may "order a passenger of a lawfully stopped car to exit his vehicle," which subjects the passenger to a brief seizure under Terry. United States v. Persinger, 284 F. App'x 885, 888 (3d Cir. 2008) (citing Maryland v. Wilson, 519 U.S. 408, 410 (1997)).

In the instant case, the traffic stop, or the seizure's "mission," ended when Defendant returned Mr. Kung's and Plaintiff's information, told Mr. Kung the traffic stop was complete, and informed him that he was free to go. (Doc. No. 34, Ex. A at 30:14-30:15.) As such, when Defendant asked Mr. Kung if he could ask him a few questions, he had exceeded the scope of the stop. (Id. at 31:24.) However, Defendant's actions in extending the traffic stop were justified because he "develop[ed] reasonable suspicion of criminal activity." Frierson, 611 F. App'x at 85 (quoting Givan, 320 F.3d at 458). After running Plaintiff's driver's license through CLEAN/NCIC, Defendant discovered that Plaintiff had numerous prior drug arrests. (Doc. No.

34, Ex. A at 28:23-28:25.)  And Defendant observed that Mr. Kung was "very apologetic," "over-talking," and nervous.  (<u>Id.</u> at 29:21-29:23.)  As such, Defendant was permitted to investigate further based on the reasonable suspicion he developed.  In addition, Defendant's request to ask Mr. Kung more questions was permissible because Defendant's actions and Mr. Kung's response were both consensual in nature, and it is undisputed that Defendant did not display an overbearing show of authority.  (Doc. Nos. 33 ¶ 14, 40-2 ¶ 17.)

Mr. Kung then granted Defendant consent to search the vehicle.  (<u>See</u> Doc. No. 34, Ex. A at 33:4-34:3.)  Defendant walked to the passenger side and asked Plaintiff to step out of the vehicle.  (<u>Id.</u> at 34:6-34:8; <u>Id.</u>, Ex. C at 20:5-20:7.)  Plaintiff complied with Defendant's request.  (<u>Id.</u>, Ex. A at 34:17.)  A police officer may "order a passenger of a lawfully stopped car to exit his vehicle," subjecting the passenger to a brief seizure under <u>Terry</u>.  <u>Persinger</u>, 284 F. App'x at 888 (citing <u>Maryland</u>, 519 U.S. at 410).  Here, the extension of the traffic stop was justified by both exceptions to the general prohibition on exceeding the time needed to address a traffic violation. Defendant had developed reasonable suspicion to investigate based on Plaintiff's prior drug arrests and the actions of Mr. Kung, and the extension of the stop was consensual.  Thus, incident to the lawful traffic stop and the ensuing events, Defendant was permitted to ask Plaintiff to exit the vehicle, and Defendant at this stage did not violate Plaintiff's Fourth Amendment rights.

### iii.    Defendant's Pat-Down of Plaintiff

Finally, the Court must determine whether Defendant's frisk of Plaintiff after he gave Defendant consent to perform a pat-down was constitutional.  Consent "is an exception to the requirements of both a warrant and probable cause."  <u>United States v. Murray</u>, 821 F.3d 386, 391 (3d Cir. 2016) (internal quotation marks omitted).  Voluntariness of consent is determined by evaluating the totality of the circumstances.  <u>United States v. Thach</u>, 411 F. App'x 485, 489 (3d

Cir. 2011) (citing <u>Shneckloth v. Bustamonte</u>, 412 U.S. 218, 227 (1973)).  The essential factors that comprise the totality of the circumstances inquiry are "the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual."  <u>United States v. Luna</u>, 76 F. App'x 411, 413 (3d Cir. 2003) (quoting <u>Givan</u>, 320 F.3d at 459).

After Plaintiff exited the vehicle, Defendant asked Plaintiff if he could perform an exterior pat-down of Plaintiff for his safety.  (Doc. No. 34, Ex. A at 35:16-35:17.)  Plaintiff gave consent for the pat-down.  (<u>Id.</u> at 35:17.)  Although the request was made on the side of I-95 after a traffic stop, Plaintiff does not argue that the request was made in a threatening or aggressive tone.  It is also undisputed that Defendant never drew his weapon during the encounter.  (<u>Id.</u> at 33:14-17.)  Finally, Plaintiff is a thirty-four year-old adult male.  (<u>Id.</u>, Ex. B at 2.)  Plaintiff does not allege that he was in any way incapable of giving consent.  Based on the totality of the circumstances, Plaintiff's consent to a pat-down was voluntarily given.  Therefore, the Court finds that the traffic stop, request to exit the vehicle, and the pat-down were all legal and did not violate Plaintiff's Fourth Amendment rights.  For all these reasons, the Court will grant Defendant's Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint.

> **2.    Plaintiff's Fourth Amendment False Arrest Claim Fails Because the Arrest Was Supported by Probable Cause**

In Count III, Plaintiff contends that he was subject to a false arrest as a result of his unconstitutional search and seizure in violation of his Fourth, Fifth, and Fourteenth Amendment rights.  (Doc. No. 12 ¶ 60-62.)  In response, Defendant argues that there is no genuine dispute of material fact because "the facts of record establish that Defendant had probable cause to arrest Plaintiff for possession of narcotics."  (Doc. No. 32 ¶ 2.)  Defendant also argues that the state court's suppression of the evidence does not prevent this Court from considering this evidence in

determining whether probable cause existed for Plaintiff's § 1983 claims. (<u>Id.</u> at 4.) The Court agrees with both of Defendant's arguments.

When police make an arrest without probable cause, the arrestee can bring "a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Wallace v. Fegan</u>, 455 F. App'x 137, 139 (3d Cir. 2011) (per curiam) (quoting <u>Groman v. Twp. Of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995)). To state a claim for false arrest, a plaintiff must allege that (1) he was arrested, and (2) the arrest was made without probable cause. <u>Himchak v. Dye</u>, 684 F. App'x 249, 253 (3d Cir. 2017) (per curiam) (citing <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d Cir. 2012)). An arrest is permissible under the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." <u>Young v. City of Pittsburgh</u>, 562 F. App'x 135, 140 (3d Cir. 2014) (quoting <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004)).

The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." <u>Id.</u> (quoting <u>Devenpeck</u>, 543 U.S. at 152). Probable cause requires "more than mere suspicion," but "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." <u>Id.</u> (quoting <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995)). Probable cause exists if, given the totality of the circumstances, "a prudent person could 'believe that a crime has been committed and the person to be arrested committed it.'" <u>United States v. Thomas</u>, 481 F. App'x 765, 767 (3d Cir. 2012) (quoting <u>United States v. Stubbs</u>, 281 F.3d 109, 122 (3d Cir. 2002)). Although probable cause is typically a fact question, "[t]he district court may conclude . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, would not support a contrary finding." <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 401 (3d Cir. 1997).

In addition, a plaintiff in a § 1983 action cannot use the exclusionary rule to avoid consideration of evidence, even if the evidence was obtained through police misconduct. See Hector v. Watt, 235 F.3d 154, 159-60 (3d Cir. 2000); Price v. City of Phila., 239 F. Supp. 3d 876, 902 (E.D. Pa. 2017). In Price, the court granted summary judgment in favor of police officer on plaintiff's false arrest claims. 239 F. Supp. 3d at 903. Although evidence of plaintiff's possession of illegal drugs was suppressed in his criminal trial, the court held that this evidence could be considered in a civil action to establish probable cause for plaintiff's arrest. Id. at 903. Regardless of the legality of a search that uncovers drugs, if possession of those drugs is illegal, a police officer has the right to effect a legitimate arrest. See Christian v. Orr, Civ. A. No. 08-2397, 2011 WL 710209, at *17 (E.D. Pa. Mar. 1, 2011), aff'd on other grounds, 512 F. App'x 242 (3d Cir. 2013).

Viewing the facts in the light most favorable to Plaintiff, his arrest was supported by probable cause. (See Doc. No. 34, Ex. A at 39:20-39:22; 40:1-42:19.) As previously stated, the frisk was constitutional because Plaintiff voluntarily consented to the pat-down. During the pat-down, Defendant discovered pills in small clear Ziploc bags and a large amount of cash on Plaintiff. (Id. at 39:20-39:22; 40:1-42:19.) Based on this evidence, it was reasonable for Defendant to conclude that Plaintiff was engaged in the distribution of narcotics, which is illegal under Pennsylvania law. Because Plaintiff consented to the search and because evidence of a crime was found during the search, Plaintiff's arrest was supported by probable cause. The suppression of this evidence in Plaintiff's criminal prosecution has no effect on this litigation, and the Court can consider the evidence found on Plaintiff in determining whether Defendant had probable cause to arrest him. Because Defendant found illegal drugs on Plaintiff, probable

cause existed as a matter of law, and Plaintiff's arrest was constitutional. For these reasons, Defendant's Motion for Summary Judgment on Count III will be granted.

### 3. Defendant Is Entitled to Qualified Immunity Because His Actions Were Not Unconstitutional and Did Not Violate Clearly Established Law

Defendant also asserts that he is entitled to qualified immunity because his actions did not violate clearly established law. (Doc. No. 32 at 10.) In response, Plaintiff contends that his Amended Complaint alleges facts that, if proven, establish a violation of a constitutional right. (Doc. No. 40-1 at 6; Doc. No. 43 at 7-9.) Plaintiff further alleges that Defendant's actions were unreasonable. (Doc. No. 40-1 at 6.)

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Davenport v. Borough of Homestead, 870 F.3d 273, 279-80 (3d Cir. 2017) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam)). Determining whether qualified immunity applies requires a two-part inquiry. First, a court must decide "whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right." Paoli v. Stetser, 651 F. App'x 123, 125 (3d Cir. 2016) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Second, a court must consider "whether such right was clearly established in light of the specific factual context." Id. (citing Saucier, 533 U.S. at 201). District courts are permitted to address either inquiry first. Pearson v. Callahan, 555 U.S. 223, 242 (2009).

Here, with respect to the first prong, because the Court has concluded that Defendant committed no constitutional violations, he is entitled to qualified immunity and dismissal of the constitutional claims. The Court's analysis could end now because a court is not required to analyze the second step of the qualified immunity test if no constitutional violation occurred.

Scott v. Harris, 550 U.S. 372, 377 (2007) (explaining that a court must only proceed to the second step of the qualified immunity analysis if it finds a constitutional violation); see also Reedy v. Evanson, 615 F.3d 197, 223-24 (3d Cir. 2010) (stating that no further inquiry is required if no constitutional violation is found). However, the Court will nonetheless briefly discuss the second prong.

Under the second prong of the test, qualified immunity applies "unless the official's conduct violated a clearly established constitutional right." Pollock v. The City of Philadelphia, 403 F. App'x 664, 669 (3d Cir. 2010) (quoting Pearson, 555 U.S. at 232). A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Woodlen v. Jimenez, 173 F. App'x 168, 170 (3d Cir. 2006) (per curiam) (quoting Saucier, 533 U.S. at 202). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Davenport, 870 F.3d at 281 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be taken in light of the specific context of the case, not as a broad general proposition." Id. (quoting Mullenix, 136 S. Ct. at 308).

As stated above, the actions Plaintiff alleges in Counts I and III did not violate Plaintiff's constitutional rights, and for that reason, Defendant is entitled to summary judgment. However, Defendant would also be entitled to summary judgment under the second prong of the qualified immunity test because his alleged conduct did not violate clearly established law. Here, not only did Defendant's conduct not violate Plaintiff's constitutional rights, it would also not be clear to a reasonable officer that his conduct was unlawful. Plaintiff points to no cases, and this Court is not aware of any, which hold that it is a violation of one's Fourth Amendment rights to ask a

driver more questions after a traffic stop.  The Court is also not aware of a case that holds that it is unconstitutional to ask for consent to frisk a passenger.  Finally, the Court is not aware of a case that holds that an arrest is not supported by probable cause in a § 1983 action where a police officer has found illegal drugs pursuant to a consensual search.  Therefore, because Defendant did not violate Plaintiff's constitutional rights and because he did not violate a clearly established right, Defendant is entitled to qualified immunity.  For this additional reason, Defendant Defendant's Motion for Summary Judgment will be granted.

**4.      Plaintiff's Claims Are Time Barred Because He Instituted This Action After the Two Year Statute of Limitations Had Run**

Finally, Defendant alleges that both of Plaintiff's claims are barred by Pennsylvania's two-year statute of limitations for personal injuries, which he submits is applicable to Plaintiff's § 1983 civil rights claims.  (Doc. No. 32 at 7.)  Specifically, Defendant argues that the statute of limitations began to accrue on January 4, 2012, when Plaintiff was arrested.  (Id. at 8.)  In response, Plaintiff contends that the statute of limitations began to accrue on April 27, 2015, when the Pennsylvania Superior Court reversed the trial court's denial of Plaintiff's motion to suppress.  (Doc. No. 40-1 at 3-4.)  He asserts that he was unaware until that point that his Fourth Amendment rights had been violated.  (Id. at 3.)

The statute of limitations for a § 1983 claim is the statute of limitations for personal injury actions in the state where the conduct arose.  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)).  "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."  Id. (citing 42 Pa. Cons. Stat. § 5524 (2017)).  By contrast, federal law governs the accrual date for a § 1983 action.  Id. (citing Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).  "[A] cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury

upon which its action is based.'" Id. (quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1988)). The date of accrual is an objective inquiry, and the court asks what a "reasonable person should have known." Id. (citing Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988)).

For § 1983 claims based on search and seizure in violation of the Fourth Amendment, the claim accrues on the day that the allegedly unlawful search and seizure occurred. MacNamara v. Hess, 67 F. App'x 139, 143 (3d Cir. 2003). This is because a plaintiff knows of his claim when the search and seizure occurs. Voneida v. Stoehr, 512 F. App'x 219, 221 (3d Cir. 2013) (per curiam). For claims alleging false arrest in violation of the Fourth Amendment, "where the arrest is followed by criminal proceedings," the statute of limitations accrues "at the time the claimant becomes detained pursuant to legal process." Woodson v. Payton, 503 F. App'x 110, 112 (3d Cir. 2012) (per curiam) (quoting Wallace, 549 U.S. at 397). As a result, for false arrest, the statute of limitations commences when the claimant "appear[s] before the examining magistrate and [is] bound over for trial." Cain v. City of Phila. Police Dep't, 447 F. App'x 297, 298 (3d Cir. 2011) (per curiam) (quoting Wallace, 549 U.S. at 391-92).

Under Pennsylvania law, the statute of limitations governing both of Plaintiff's claims is two years. See 42 Pa. Cons. Stat. § 5524(1) (2017). And this statute of limitations began to accrue when Plaintiff knew or should have known of his injury. Plaintiff's search and seizure occurred on January 4, 2012. (Doc. No. 34, Ex. A at 34:6-35:17; Id., Ex. C at 20:5-20:7.) Therefore, Plaintiff's claim in Count I for illegal search and seizure accrued on January 4, 2012, when the search and seizure occurred, and Plaintiff knew or should have known of his injury. On January 4, 2012, Plaintiff also was arraigned in the Court of Common Pleas of Delaware County. (Id., Ex. D at 1.) Thus, Plaintiff's claim in Count III for false arrest also accrued on

January 4, 2012, when he was arrested and arraigned before a magistrate judge and bound over for trial. Plaintiff instituted this action on September 11, 2015. (Doc. No. 1.) Because Plaintiff commenced this action more than two years after the statute of limitations on his claims accrued, Defendant's Motion for Summary Judgment will be granted on this ground, too.

V.      **CONCLUSION**

For all the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 32) will be granted in its entirety, and Plaintiff's Motion for Summary Judgment (Doc. No. 30) will be denied. An appropriate Order follows.